FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 APR -6  PM 12: 42

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DURAPLH S. HAYES, JR.,** | * | **CIVIL ACTION NO.** |
| | * | |
| | * | |
| **Plaintiff,** | * | **06-1791** |
| | * | |
| **VERSUS** | * | **SECTION** |
| | * | |
| **WELLS FARGO HOME MORTGAGE, NKA** | * | **JUDGE** SECT. L MAG.1 |
| **WELLS FARGO BANK NA,** | * | |
| | * | |
| **Defendant.** | * | **MAGISTRATE** |
| | * | |

**************************************************

### NOTICE OF REMOVAL

Defendant Wells Fargo Home Mortgage, A Division of Wells Fargo Bank, N.A. (named as Wells Fargo Home Mortgage nka Wells Fargo Bank, N.A.) ("Wells Fargo"), while fully reserving its rights to object to service, jurisdiction, and venue, and without waiving any of its other defenses or objections, removes to the Court the civil action bearing the caption, *Duralph S. Hayes, Jr. v. Wells Fargo Home Mortgage, NKA Wells Fargo Bank NA*, No. 628-619, Div. K, originally filed in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana, by plaintiff Duralph S. Hayes, Jr. ("Petitioner") as follows:

Fee 250.
✓ Process_____
X  Dktd _____
___ CtRmDep_____
___ Doc. No_____

**Removal Jurisdiction**

1.

This Court's removal jurisdiction is based on federal question jurisdiction, as provided in 28 U.S.C. § 1331 and 28 U.S.C. §§ 1441(a) and (b).

**Federal Question Jurisdiction**

2.

The claims asserted by the Petitioner include allegations that, among other things, Wells Fargo is liable for a contract interpretation that "was not made in good faith by Wells Fargo, and constitutes Unfair Trade Practice under State and **Federal** Law." *See* Petition, at ¶10. (emphasis added)  The Petitioner specifically alleges Wells Fargo, as assignee of a mortgage originally between Petitioner, as borrower, and AmPro Mortgage Company, as lender, force-placed flood insurance in the full appraisal value of the property, which is located in a flood zone, that secures said mortgage after Petitioner failed to procure such a policy.  *See* Petition, at ¶¶ 3, 7, 8. Petitioner alleges the original lender, AmPro Mortgage Company, required flood insurance only in the amount of the borrower's indebtedness to the lender. *See* Petition, at ¶¶ 4, 5.  Petitioner further alleges the interpretation of the mortgage contract employed by Wells Fargo, which allegedly requires all loans covering property located in a flood zone to be insured to its full appraisal value, is more onerous and contrary to the terms originally agreed to by the parties. *See* Petition, at ¶¶ 7, 10, 11.  Petitioner seeks damages, interest, costs, and attorney fees arising out of this matter. *See* Petition, at ¶ 11.

3.

Based on these allegations, Petitioner contends that Wells Fargo violated state and federal Unfair Trade Practice laws. *See* Petition, at ¶ 10.

4.

This Court has supplemental jurisdiction over all other claims asserted in the Petition in accordance with 29 U.S.C. §§ 1367(a) and/or 1441(c).

5.

The Notice of Removal is timely under 28 U.S.C. § 1446(b) because it was filed within thirty days after the service of summons upon Wells Fargo, through its agent for service of process, on March 8, 2006.

6.

A copy of the Notice of Removal has been mailed to all counsel of record and will be filed with the Clerk of Court for the Twenty-Fourth Judicial District Court for the Parish of Jefferson.

7.

Attached to this Notice of Removal as Exhibit "A" are copies of all process, pleadings, and orders served upon Wells Fargo through this date, and a copy of the record from the removed state court proceeding.

Respectfully submitted, this 6th day of April, 2006.

STEPHEN W. RIDER, T.A. (#02071)
LAUREN E. CAMPISI (#29787)
MCGLINCHEY STAFFORD, PLLC
643 Magazine Street
New Orleans, Louisiana 70130
Telephone: (504) 586-1200
Facsimile: (504) 596-2800

ATTORNEYS FOR DEFENDANT WELLS
FARGO HOME MORTGAGE, A DIVISION
OF WELLS FARGO BANK, N.A.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served

upon all counsel of record by depositing same in the U.S. Mail, postage prepaid and properly

addressed, this 6TH day of April, 2006.

_____
STEPHEN W. RIDER

613593.1

24th JUDICIAL DISTRICT COURT PARISH OF JEFFERSON

STATE OF LOUISIANA

NO:

6 28619

DURAPLH S. HAYES, JR.

VERSUS

WELLS FARGO HOME MORTGAGE, NKA WELLS FARGO BANK NA

Filed:_____          Deputy Clerk_____

## PETITION FOR DECLARATORY JUDGMENT
## AND INJUNCTIVE RELIEF

COMES NOW, the Plaintiff, Duralph S. Hayes, Jr., a citizen and resident of the

State of Louisiana, brings this action for declaratory judgment and other relief against

Wells Fargo Home Mortgage merged into Wells Fargo Bank National Association.

### DEFENDANT

1.

Wells Fargo Home Mortgage, Wells Fargo Bank NA is a non-Louisiana

Corporation doing business in Louisiana and can be served via their agent for service at:

Corporation Service Company, 320 Somerulos St., Baton Rouge, LA 70802-6129.

### VENUE

2.

This case involves dispute over a note and mortgage covering property owned by

Mr. Duralph S. Hayes, Jr., located at 7813 Warsaw St., Metairie LA.

### FACTS

3.

On July 14, 2004, Plaintiff secured a loan through AmPro Mortgage Corporation

in the amount of $50,000.00.

4.

As a condition of the loan AmPro required that the Mortgagor, Mr. Duralph S.

Hayes, Jr., obtain flood insurance to cover their AmiPro's risk of flood/losses arising out

of the property.

**EXHIBIT**

A

CODED

ISSUED _Cit/Pet/Appr Exhibit A_

MAR 2 2006
DATE

Deputy Clerk                C B/

IMAGED FEB 27 '06          IMAGED MAR 13 '06

5.

Plaintiff met all requirements AmPro for the loan, including purchase of a $50,000 flood coverage policy to cover the lender's security interest. Having met all of the lender's terms, the loan was made on July 14, 2004, and Plaintiff has made all payments of interest and principal pursuant to the terms of the original loan beginning on 09/01/2004 to the present day.

6.

Subsequent to the dates noted above, AmPro, sold and assigned their interests and rights in the loan covering Plaintiff's property to Wells Fargo Bank. Plaintiff continued to pay his principal and interest as before.

7.

On or about January 2, 2005, Wells Fargo notified plaintiff that they required that all loans covering property in a flood zone to be insured to the full value of the appraised value of the property, not just to the amount of indebtedness to the lender.

8.

Wells Fargo, after receiving no proof from plaintiff of purchase of additional flood insurance, procured insurance on its own and began to demand additional monies from Plaintiff in the form of insurance premiums, penalties, escrow deposits, bank charges, interest and other costs.

9.

Despite the terms under the contract and the writings between AmPro and Plaintiff, Wells Fargo insists that the agreement signed by Plaintiff gives them the right demand insurance beyond the amount of security in the agreement. Plaintiff has kept the mortgage current pursuant to the original terms of the agreement and has paid additional amounts toward the principal, but has not been able to resolve differences regarding Wells Fargo's interpretation of certain clauses in the agreement annexed here to as Exhibit "A".

10.

Plaintiff believes that this interpretation of his contract was not made in good faith by Wells Fargo, and constitutes Unfair Trade Practice under State and Federal Law.

IMAGED FEB 27 '06

2

**PRAYER**

11.

Plaintiff seeks to have this Court interpret and enforce the agreement pursuant to the terms as originally agreed to by and between the parties; to enjoin defendant from further deliberate interpretations so as to render the agreement more onerous; and to order defendant to pay Plaintiff's damages, interest, costs and attorney fees arising out of this matter.

Submitted on Plaintiff's

Behalf by:

John F. Dillon 18586
John F. Dillon PLC
81174 Jim Loyd Rd
Folsom LA 70437
Telephone: 985 796-8710
Facsimile: 985 796-8711
Email: jdillon1@bellsouth.net

**PLEASE SERVE:**

Wells Fargo Home Mortgage, Wells Fargo Bank NA
A non-Louisiana Corporation doing business in Louisiana
Through their agent for service at:
Corporation Service Company
320 Somerulos St.
Baton Rouge, LA 70802-6129.

IMAGED FEB 27 '06

3

STATE OF LOUISIANA

PARISH OF JEFFERSON

AFFIDAVIT

    I, Duralph S. Hayes, Jr., appear and swear under Oath that the allegations as set

out in this Petition are true and correct.

    I also affirm that the attached documents are copies of my note and agreement

with AmPro.

Signed _Duralph S. Hayes Jr._
       DURALPH S. HAYES, JR.

Sworn before me *the 14th Day of February, 2006*
Notary

NOTARY PUBLIC
MARK M. DENNIS
BAR No. 04076

My Commission Expires
Upon Death

4



# EXHIBIT A

## NOTE AND AGREEMENT
## WITH AmPro

### Duralph S. Hayes, Jr.
### V
### Wells Fargo Home Mortgage, NKA
### Wells Fargo Bank NA

### 24th JDC Jefferson Parish

Stamp Copy WF0194(53135)

07/19/2004 01:46:34 PM JEFF PAR 995026 dmg $155.00
10443693 MORTGAGE BOOK 4196 PAGE 508

TITLE MANAGEMENT GROUP, INC
3421 N. CAUSEWAY BLVD STE #707
METAIRIE, LA 70002
PHONE: (504) 834-2977

Return to: AMPRO MORTGAGE CORPORATION
ATTENTION: POST CLOSING
P.O. BOX 83570
PHOENIX, AZ 85071-3570

———————— [Space Above This Line For Recording Data] ————————

Loan No: 3020009618                                    Data ID: 852
Borrower: DURALPH S HAYES JR

## MORTGAGE

MIN: 100274830200096185

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated July 15, 2004, together with all Riders to this document.

(B) "Borrower" is DURALPH S HAYES JR , A MARRIED MAN    . Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. The tax identification number of MERS is 54-1927784. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is AMPRO MORTGAGE CORPORATION. Lender is a CORPORATION organized and existing under the laws of the State of DELAWARE. Lender's address is 2133 WEST PEORIA AVENUE, SUITE 130, PHOENIX, ARIZONA  85029.  Lender's tax identification number is 01-0764768.

(E) "Note" means the promissory note signed by Borrower and dated July 15, 2004. The Note states that Borrower owes Lender FIFTY THOUSAND and NO/100-----Dollars (U.S. $ 50,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than August 1, 2019.

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. All Riders to this Security Instrument are deemed to be a part of this Security Instrument as if fully incorporated herein. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider                  ☐ Planned Unit Development Rider
☒ 1-4 Family Rider               ☐ Biweekly Payment Rider
☒ Other(s) [specify]

Exhibit "A" Legal & Marital

LOUISIANA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3019   1/01    (Page 1 of 12 Pages)

P = 3020009618 + 2996 + 01 + 12 + LACNVADT

EXHIBIT "A"

PROPERTY DESCRIPTION:

A CERTAIN PIECE OR PORTION OF GROUND, with all the buildings and improvements thereon, and all of the rights, servitudes and appurtenances thereunto applying, situated in the Parish of Jefferson, State of Louisiana, in that area designated as BUNCHE VILLAGE, all in accordance with survey of Adloe Orr, Jr. & Associates, C.E., dated December 15, 1954, and measures as follows, to-wit:

LOT NO. 97 in SQUARE C bounded by Warsaw Street, Howard Avenue, Monette Street and Lester Avenue, commencing at a distance of 129.5 feet from the corner of Lester Avenue and Warsaw Street, and measures thence 43.5 feet front on Warsaw Street, same width in the rear, by a depth of 92.24 feet, between equal and parallel lines.

Improvements thereon bear the Municipal No. 7813 WARSAW STREET.

Made and Accepted subject to:

Restrictions contained in act before Moise S. Steeg, Jr., Notary Public, dated November 18, 1954, registered in COB 369, folio 105.

Servitude 5 feet in depth extending along the entire rear width of the lot covered hereby for drainage purposes.

MARITAL STATUS:

Duralph S. Hayes, Jr. (SS# 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), a person of the full age of majority and competency and resident of Jefferson, who swears unto me, Notary Public, that he/she has been married twice, first to Helen Randall from whom he was divorced, and second to Elaine Labostrie with whom he/she is presently living and residing and further declares that the property being mortgaged is his/her separate and paraphernal property and that his/her present mailing address is 7813 Warsaw Street, Metairie, Louisiana 70003.

Loan No: 3020009618                                          Data ID: 852

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and hypothecate the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**LOUISIANA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3019   1/01   (Page 3 of 12 Pages)

F+3020009618+2996+03+12+LACNVADT

Loan No: 3020009618                                                   Data ID: 852

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**LOUISIANA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3019    1/01    (Page 4 of 12 Pages)

P+3020009618+2896+04+12+LACNVADT

Loan No: 3020000618
Borrower: DURALPH S HAYES JR

Data ID: 852

## 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 15th day of July, 2004, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to AMPRO MORTGAGE CORPORATION (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

7013 WARSAW ST
METAIRIE, LOUISIANA 70003-6429
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3170   1/01
(Page 1 of 3 Pages)

P + 3020000618 + 2896 + 01 + 03 + MULTIFAMW

Loan No: 3020009618        Data ID: 852

**D.** "BORROWER'S RIGHT TO REINSTATE" DELETED. Section 19 is deleted.

**E.** BORROWER'S OCCUPANCY. Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**F.** ASSIGNMENT OF LEASES. Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**G.** ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents, any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**H.** CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3170   1/01
*(Page 2 of 3 Pages)*

P + 3020009618 + 2996 + 02 + 03 + MULTBNW

Loan No: 3020009618

Data ID: 852

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

*Elaine Labostrie*        *Duralph S. Hayes Jr.* ———(Seal)

Elaine Labostrie, Interimus       DURALPH S HAYES JR —Borrower
Spouse

Witnesses:

_____ Pat Callahan (Seal)
(Printed Name)

_____ (Seal)
Dong Tassin (Printed Name)

"NE VARIETUR" for identification with an Act of Mortgage passed before the above signed witnesses and me, Notary, this _____ day of

July _____ 20 04

Notary ID/Bar roll #
My commission expires: At My Death

Joseph C. Coates, III
Notary Public
Qualified for Jefferson Parish
State of Louisiana
Commission Expires: At Death
Bar roll # 20020   Notary ID # 50184



MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3170   1/01
(Page 2 of 3 Pages)

P+3020009618+2995+02+03+MULTIRNW

Loan No: 3020009618                                                                                      Data ID: 852

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**LOUISIANA** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

Form 3019    1/01    (Page 5 of 12 Pages)

P+3020009618+2006+05+12+LACNVADT

Loan No: 3020009618                                                        Data ID: 852

7.  Preservation, Maintenance and Protection of the Property; Inspections.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition.  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  Borrower's Loan Application.  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

**LOUISIANA** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

Form 3019    1/01    (Page 6 of 12 Pages)

P+3020009618+2906+06+12+LACNVADT

Loan No: 3020009618                                                        Data ID: 852

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**LOUISIANA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3019   1/01   (Page 7 of 12 Pages)

P+3020009618+2996+07+12+LACNWACT

Loan No: 3020009618                                      Data ID: 852

12. Borrower Not Released; Forbearance By Lender Not a Waiver.  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several.  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges.  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note).  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices.  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise.  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address.  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.  There may be only one designated notice address under this Security Instrument at any one time.  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction.  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**LOUISIANA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3018    1/01    (Page 8 of 12 Pages)

P+3020009618+2995+08+12+LACNVADT

Loan No: 3020009618                                                                Data ID: 852

17.  **Borrower's Copy.**  Borrower shall be given one copy of the Note and of this Security Instrument.

18.  **Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19.  **Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.  **Sale of Note; Change of Loan Servicer; Notice of Grievance.**  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**LOUISIANA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3019    1/01    (Page 8 of 12 Pages)

P+3020009618+2995+09+12+LACNVADT

Loan No: 3020009618                                                                 Data ID: 852

21.  Hazardous Substances.  As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

22.  Acceleration; Notice of Default; Right to Cure.  Lender shall give notice to Borrower prior to acceleration following Borrower's failure to pay principal, interest, and other fees and charges as provided in the Note, or following Borrower's breach of any covenant or agreement in this Security Instrument.  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and the sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower and foreclosure as available under Applicable Law.  If the default is not cured on or before the date specified in the notice, Lender at its option may accelerate and require immediate payment in full of all sums secured by this Security Instrument without further demand for payment.

23.  Foreclosure.  Following Lender's acceleration of payment, Lender may commence appropriate foreclosure proceedings under this Security Instrument under ordinary or executory process, under which Lender may cause the Property to be immediately seized and sold, with or without appraisal, in regular session of court or in vacation, in accordance with Applicable Law.  For purposes of foreclosure under executory process procedures, Borrower confesses judgment and acknowledges to be indebted to Lender for all sums secured by this Security Instrument, in principal, interest, costs, expenses, attorneys' fees and other fees and charges.  To the extent permitted by Applicable Law, Borrower waives: (a) the benefit of appraisal as provided in Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sales; (b) the demand and three days' delay as provided in Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; (c) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (d) the three days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (e) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other articles not specifically mentioned above.  Borrower agrees that any declaration of fact made by an authentic act before a notary public and two witnesses by a person declaring such facts to be within his or her knowledge, will constitute authentic evidence of such facts for purposes of foreclosure under Applicable Law and for purposes of La. R.S. § 9:3504(D)(6).

24.  Cumulative Remedies.  Lender shall have such additional default remedies as may be available under the Applicable Law.  All of Lender's remedies shall be cumulative, and nothing under this Security Instrument shall limit or restrict the remedies available to Lender following default.

25.  Keeper.  Should the Property be seized as an incident to an action for recognition or enforcement of this Security Instrument by executory process, sequestration, attachment, writ of *fieri facias*, or otherwise, Borrower agrees that the court issuing such an order shall, if requested by Lender, appoint Lender, or any person or entity designated by Lender, as keeper of the Property as provided in La. R.S. §§ 9:5136, et seq.  Borrower agrees to pay the reasonable fees of such a keeper, which fees shall be secured by this Security Instrument as an additional expense.

**LOUISIANA** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

Form 3019    1/01    (Page 18 of 12 Pages)

P+3020009618+2996+18+12+LACNVADT

Loan No: 3020009618                                                                 Data ID: 852

26. **Cancellation.** This Security Instrument shall remain in effect until canceled from the public records. Following the full payment and satisfaction of all sums secured by the Security Instrument, Borrower may request in writing that Lender provide Borrower with the original paraphed Note marked "paid in full", or with an appropriate mortgage cancellation certificate, for submission to the Clerk of Court or Recorder of Mortgages for the Parish of Orleans for the purpose of canceling this Security Instrument. Lender may delay providing Borrower with the canceled Note or with a mortgage cancellation certificate for up to 60 days following Lender's receipt of Borrower's request. Unless Lender agrees to cancel this Security Instrument from the public records, Borrower shall be responsible for doing so. Borrower shall pay all cancellation costs.

27. **Waiver of Homestead Rights.** Borrower (and Borrower's spouse to the extent applicable) waive any homestead rights and other exemptions from seizure with respect to the Property as may be provided under Applicable Law.

28. **Savings and Loan Association.** If Lender is a savings and loan association or thrift institution, the Note and all sums secured by this Security Instrument shall have the benefits of La. R.S. § 6:830.

29. **Future Advances.** Lender may, but shall not be required to, make advances to protect the security of this Security Instrument pursuant to Section 9. At no time shall the principal amount of the indebtedness secured by this Security Instrument, including advances made pursuant to Section 9, exceed 150% of the original amount of the indebtedness set forth in the Note.

30. **Late Charges.** Should Borrower fail to pay any installment of principal and interest under the Note within 15 days of when due, Borrower agrees to pay Lender a late charge in an amount equal to  5.00%.

31. **Marital Status.** Borrower's marital status is:  SEE ADDENDUM ATTACHED HERETO.

32. **Additional Defined Terms.** As used in this Security Instrument, "Lender" additionally includes any successors and assigns of the Lender first named above, as well as any subsequent holder or holders of the Note, or of any indebtedness secured by this Security Instrument.

As used in this Security Instrument, "Note" additionally includes any substitute note or notes issued in replacement of Note first described above.  It is Borrower's intent that this Security Instrument secure all renewals, extensions, refinancings, and modifications of the Note, to the extent provided by La. R.S. § 9:2390.

As used in this Security Instrument, "Lien" also means a privilege, mortgage, security instrument, assignment or other encumbrance.  "Real property" means "immovable property" as that term is used in the Louisiana Civil Code.  "Condemnation" includes "expropriation" as that term is used in Louisiana law.

33. **Property includes Servitudes and Component Parts.** The Property subject to this Security Instrument additionally includes servitudes and component parts now or hereafter attached to or incorporated into the Property.

34. **Full Ownership.** Borrower is the full and lawful owner of the Property.  If the Security Instrument is on a leasehold interest, and Borrower subsequently acquires ownership of the Property, Borrower's leasehold and ownership interests in the Property shall not merge unless Lender agrees to the merge in writing.

35. **Modification of Section 13 of this Security Instrument.**  Section 13 of this Security Instrument is hereby modified to the following extent.

Each Borrower covenants and agrees that Borrower's obligations and liabilities under this Security Instrument and under the Note shall be joint, several and solidary with all other Borrowers and with each guarantor of the Note (if applicable).  However, to the extent that the Property is community-owned immovable (real) property, and Borrower's spouse co-signs this Security Instrument, but does not co-sign the Note, Borrower's spouse is co-signing this Security Instrument for purpose of: (a) concurring with the granting of this Security Instrument on the community-owned Property (to the extent required under Civil Code Article 2347), without obligating the separate property of Borrower's spouse; and (b) waiving any homestead rights to which Borrower's spouse may be entitled under Applicable Law.  Notwithstanding the fact that Borrower's spouse did not co-sign the Note, and further notwithstanding the language of Section 13 of this Security Instrument, Borrower's spouse is obligated for payment of the Note and all other sums secured by this Security Instrument to the extent of the spouse's community property interest, and to the extent that the Note is a community obligation.

36. **Additional Waivers.** Borrower hereby waives production of mortgage, conveyance and other certificates with respect to the Property, and relieves and releases the Notary Public before whom this Security Instrument was passed from all responsibility and liability in connection therewith.

**LOUISIANA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3019   1/01   (Page 11 of 12 Pages)



P+3020009618+2906+11+12+LACNVADT

Loan No: 3020000618                          Data ID: 852

THUS DONE, AND PASSED, on this ___15___ day of ___July___, 20 04, in the presence of the undersigned Notary Public, and in the presence of the undersigned competent witnesses, who hereinto sign their names, along with Borrower, after being duly sworn and after reading of the whole.

Witnesses:

_____  Pat Gilleron
                           Printed Name

_____  Doug Tassin   Printed Name

_Elaine LaBostrie_                    _Duralph S. Hayes Jr._ ____(Seal)
Elaine Labostrie, Intervenor Spouse    DURALPH S HAYES JR —Borrower

                                       Notary ID/Bar roll #
                                       Notary qualified in _____ Parish,
                                       Louisiana
                                       My commission expires:  At My Death

                    [Notary Seal:
                    JOSEPH C. COATES III
                    NOTARY PUBLIC
                    JEFFERSON PARISH, LA]

                            Joseph C. Coates, III
                            Houma ? John
                            Qualified for Jefferson Parish
                            State of Louisiana
                            Commission Expires: At Death
                            Bar Roll # 24553   Notary ID # 50194

LOUISIANA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                                        Form 3819   1/01   (Page 12 of 12 Pages)

[barcode]
P+3020000618+2896+12+12+LAGNVADT

**JOHN F. DILLON PLC**
ST. TAMMANY OFFICE
PO BOX 369
FOLSOM LA 70437
985) 796-8710

Licensed in LA and MS
Fax ) 796-8711
jdillon1@bellsouth.net

February 15, 2006

Jon A. Gegenheimer, Clerk
24th Judicial District Court
200 Derbigny Street
PO Box 10
Gretna LA 70054

    *Re:*   *Duralph S. Hayes, Jr. versus Wells Fargo Home Mortgage, NKA*
         *Wells Fargo Bank NA*

Dear Mr. Gegenheimer:

      Enclosed is the original and two copies of our Petition for Declaratory Judgment and Injunctive Relief in the above referenced matter.

      Please file the original into the Court's record, forward a service copy to the Sheriff of East Baton Rouge Parish, and return a conformed copy to us in the self-addressed and stamped envelope enclosed.

      Our check in the amount of $250.00 is enclosed for your filing fees and our check in the amount of $22.16 payable to the Sheriff of East Baton Rouge Parish for service is also enclosed.

      With best regards, I remain

Sincerely,

*Margaret L. Tanner*

Margaret L. Tanner
Paralegal to John F. Dillon

/mlt
Enclosures (6)

**IMAGED** FEB 27 '06

STATE OF LOUISIANA

PARISH OF JEFFERSON

AFFIDAVIT

    I, Duralph S. Hayes, Jr., appear and swear under Oath that the allegations as set

out in this Petition are true and correct.

    I also affirm that the attached documents are copies of my note and agreement

with AmPro.

Signed _Duralph S. Hayes Jr._
        DURALPH S. HAYES, JR.

Sworn before me _the 14th Day of February, 2006_
Notary

_Mark M Dennis_

          NOTARY PUBLIC
          MARK M. DENNIS
          BAR No. 04676

My Commission Expires
Upon Death

CBI
IMAGED MAR 13 06

C88619

4

STATE OF LOUISIANA

PARISH OF JEFFERSON

AFFIDAVIT

     I, Duralph S. Hayes, Jr., appear and swear under Oath that the allegations as set

out in this Petition are true and correct.

     I also affirm that the attached documents are copies of my note and agreement

with AmPro.

Signed _Duralph S. Hayes Jr._
     DURALPH S. HAYES, JR.

Sworn before me _the 14th Day of February, 2006_
Notary

NOTARY PUBLIC
MARK M. DENNIS
BAR No. 04578

My Commission Expires
Upon Death

IMAGED MAR 13 '06

4



DIV. K
JUDGE
MARTHA E. SASSONE

(101) Citation: ISS CIT & PET FOR DECLARATORY JUDGMENT AND
INJUNCTIVE RELIEF; AFFIDAVIT, EXHIBIT "A"                    060302-6526-5

24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

DURAPLH S. HAYES, JR.                         Case: 628-619   Div: "K"
    versus                                     P 1 DURAPLH S. HAYES JR
WELLS FARGO HOME MORTGAGE, NKA WELLS FARGO
BANK NA

To: WELLS FARGO HOME MORTGAGE
WELLS FARGO BANK NA, A NON-LOUISIANA
CORPORATION DOING BUSINESS IN LOUISIANA
THROUGH THEIR AGENT FOR SERVICE              CK NO 3997 - $22.16
CORPORATION SERVICE COMPANY
320 SOMERULOS STREET
BATON ROUGE, LOUISIANA 70802-6129

PARISH OF JEFFERSON

You are hereby summoned to comply with the demand contained in the **PETITION FOR
DECLARATORY JUDGMENT AND INJUCTIVE RELIEF, AFFIDAVIT, EXHIBIT "A"** of which a true
and correct copy accompanies this citation, or make an appearance either by filing a pleading or
otherwise, in the 24th Judicial District Court in and for the Parish of Jefferson, State of Louisiana,
within **FIFTEEN (15) CALENDAR** days after the service hereof, under penalty of default.

This service was requested by attorney JOHN F. DILLON and was issued by the Clerk Of Court on
the 2nd day of March, 2006.

_____
Deputy Clerk of Court for
Jon A. Gegenheimer, Clerk Of Court

_____

(101) Citation: ISS CIT & PET FOR DECLARATORY JUDGMENT AND
INJUNCTIVE RELIEF; AFFIDAVIT, EXHIBIT "A"                    060302-6526-5

SERVICE INFORMATION

Received on the _____ day of _____, _____ and on the _____ day of
_____, _____ served the above named party as follows:

PERSONAL SERVICE on the party herein named _____

DOMICILIARY SERVICE on the party herein named by leaving the same at his domicile in this parish
in the hands of _____ a person of suitable age and discretion
residing in said domicile and whose name and other facts connected with this service, I learned by
interrogating the said person, said party herein being absent from his residence at the time of said
service.

RETURNED: Parish of _____ this ____ day of _____, _____.

SERVICE: $ _____         BY: _____
MILEAGE: $ _____              Deputy Sheriff
   TOTAL: $ _____

IMAGED MAR 2 9 2006

24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 628-619                                 SECTION ""                          DIVISION "K"

DURAPLH S. HAYES, JR.

VERSUS

WELLS FARGO HOME MORTGAGE, NKA WELLS FARGO BANK NA

FILED:_____          _____
                                                                    DEPUTY CLERK

### UNOPPOSED FIRST MOTION OF WELLS FARGO HOME MORTGAGE, INC. FOR EXTENSION OF TIME

NOW INTO COURT, through undersigned counsel, comes defendant Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), and moves the Court for an extension of time of thirty (30) days, through and including April 24, 2006, within which to file responsive pleadings to the Petition for Declaratory Judgment and Injunctive Relief filed by plaintiff in the captioned case, for the reasons that the defendant has only recently been served with the Petition, responsive pleadings are presently due by March 23, 2006, and Wells Fargo requires additional time to investigate plaintiff's allegations and to prepare responsive pleadings. This is the first extension requested by the defendant. Plaintiff's counsel has been contacted and has no opposition to the requested extension.

Respectfully submitted, this 22d day of March, 2006.

_____
ANTHONY ROLLO (#01133)
STEPHEN W. RIDER (#2071)
McGLINCHEY STAFFORD, PLLC
643 Magazine Street
New Orleans, LA  70130
Telephone: (504) 586-1200
Facsimile: (504) 596-2800
ATTORNEYS FOR DEFENDANT
WELLS FARGO HOME MORTGAGE, INC.

CBI
IMAGED APR 03 '06



## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing motion and order have been forwarded to all counsel of record, by placing same in the U.S. Mail, properly addressed and postage prepaid, on this *22d* day of March, 2006.

_____
STEPHEN W. RIDER

610994.1

IMAGED APR 0 3 '06

24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 628-619                    SECTION ""                    DIVISION "K"

DURAPLH S. HAYES, JR.

VERSUS

WELLS FARGO HOME MORTGAGE, NKA WELLS FARGO BANK NA

FILED:_____        _____
                                          DEPUTY CLERK

ORDER

Considering the foregoing Unopposed First Motion for Extension of Time filed by defendant Wells Fargo Home Mortgage, Inc.;

It IS HEREBY ORDERED that defendant Wells Fargo Home Mortgage, Inc., be, and it is hereby, granted an additional thirty (30) days within which to file responsive pleadings to the Petition for Declaratory Judgment and Injunctive Relief filed by the plaintiff in this case, through and including April, 24, 2006.

Gretna, Louisiana, this 27 day of March, 2006.

JUDGE, 24th JUDICIAL DISTRICT COURT

610994.1

CBl
IMAGED APR 0 3 '06

JS 44   (Rev. 11/04)

## CIVIL COVER SHEET

06 - 1791

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a)   PLAINTIFFS** *Duralph S, Hayes, Jr.*

**DEFENDANTS** *Wells Fargo Home Mortgage, A Division of Wells Fargo Bank, N.A.*

SECT. L MAG. 1

**(b)**   County of Residence of First Listed Plaintiff *Jefferson*
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)**   Attorney's (Firm Name, Address, and Telephone Number) *John F. Dillon 81174 Jim Loyd Rd, Folsom, La, 70437 (985) 796-8710*

Attorneys (If Known) *Stephen W. Rider, McGlinchey Stafford, PLLC, 643 Magazine St., New Orleans, La. 70130 (504) 586-1200*

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question (U.S. Government Not a Party)
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): *Federal Unfair Trade Practice Act, 15 U.S.C. §41, et seq.*
Brief description of cause: *unfair Trade Practices under Federal Law*

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY**
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE *4/6/06*

SIGNATURE OF ATTORNEY OF RECORD *Stephen W. Rider*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____