UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DURAPLH S. HAYES, JR.,** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NUMBER: 06-1791** |
| **WELLS FARGO HOME MORTGAGE, NKA WELLS FARGO BANK, NA** | * | **SECTION "L"(4)** |

## ORDER & REASONS

Pending before the Court is Defendant Wells Fargo Home Mortgage, nka Wells Fargo Bank, NA's ("Wells Fargo") Motion for Summary Judgment (Rec. Doc. 7). For the following reasons, this Motion is GRANTED.

### I.   BACKGROUND

On July 15, 2004, Plaintiff Duralph Hayes, Jr. ("Hayes") and AmPro Mortgage Corporation ("AmPro") executed a mortgage agreement ("Mortgage Agreement") whereby Hayes secured a loan from AmPro in the amount of $50,000 in connection with the purchase of a piece of property located at 7813 Warsaw Street in Metairie, Louisiana. This property was located within a Special Flood Hazard Area ("SPHA"), an area that the federal government designates as prone or vulnerable to flooding. Thus, as a condition to the loan, AmPro required that Hayes procure flood insurance to cover risk of loss for flood damage to the property. Consequently, Hayes purchased a flood insurance policy with a coverage limit of $50,000, the amount of Hayes' indebtedness to AmPro.

Subsequent to the date the Mortgage Agreement was executed, AmPro assigned its interest in the Mortgage Agreement to Wells Fargo ("Lender"). Hayes ("Borrower") states that Wells Fargo notified him on January 2, 2005 that it required all loans covering property in a flood zone to be insured to the full amount of the appraised property value, rather than the

amount of indebtedness. Hayes failed to procure the additional insurance, and Wells Fargo, relying on language contained in the Mortgage Agreement, obtained a policy with coverage in an amount equal to the full fair market value of the property. Hayes states that Wells Fargo then began to demand additional payments from Hayes in the form of insurance premiums, penalties, escrow deposits, bank charges, interest, and other costs to compensate for the price of obtaining the insurance.[1]

On February 27, 2006, Hayes brought the present action against Wells Fargo in the 24th Judicial District Court for the Parish of Jefferson, Louisiana. In his complaint, Hayes asserts that according to the Mortgage Agreement's terms, Wells Fargo did not have the right to demand flood insurance coverage beyond the amount of the outstanding loan balance, an amount that Hayes and AmPro agreed would not be modified throughout the duration of the contract. Hayes claims that Wells Fargo's interpretation of certain contract clauses was not made in good faith and constitutes unfair trade practice under state and federal law. On April 6, 2006, Wells Fargo removed the present action to this Court based on federal question jurisdiction.

## II. PRESENT MOTION

Wells Fargo contends that it is entitled to summary judgment as the undisputed material facts establish that the Mortgage specifically empowers it to determine the required amount of insurance; to change this amount during the course of the loan; and to obtain flood insurance if Hayes fails to buy the required coverage. Wells Fargo also asserts that Hayes does not have a claim under the Louisiana Unfair Trade Practices Act ("LUTPA") because it acted within its contractual rights; LUPTA does not apply to Wells Fargo; and any claim of Hayes under LUPTA

---

[1] Wells Fargo denies that it sought recovery of the amount for additional coverage in any form other than premiums.

is preempted by federal law.  Lastly, Wells Fargo contends that Hayes does not have a claim under any federal unfair trade practices act.

### III.    LAW AND ANALYSIS

#### A.    Summary Judgment Standard

A party moving for summary judgment is entitled to judgment as a matter of law if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, indicate that no genuine issue exists as to any material fact.  Fed. R. Civ. P. 56.  When considering a motion for summary judgment, the court must "review the evidence and the inferences to be drawn therefrom in the light most favorable to the non-moving party."  *General Universal Systems, Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004) (quoting *Daniels v. City of Arlington, Texas*, 246 F.3d 500, 502 (5th Cir. 2001)).  If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  The non-movant must come forward with more than "conclusory allegations, speculation, and unsubstantiated assertions" once the moving party meets his or her burden for summary judgment.  *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (referring to *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)).  If the evidence presented by the non-moving party is "merely colorable" or is "not significantly probative," summary judgment is appropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  "The moving party is entitled to summary judgment as a matter of law because the non-moving party has failed to make a sufficient showing on an essential element of [his or] her case with respect

to which [the non-moving party] has the burden of proof." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

**B.      The Mortgage Agreement and Hayes' Breach of Contract Claim**

The relevant provision of the Mortgage Agreement regarding procurement of flood insurance provides, in part:

> **5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. *This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentence can change during the term of the Loan....*
> *If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage.* Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard, or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Mortgage Agreement, at ¶ 5. (emphasis added).

The Court looks to Louisiana law when reviewing the terms of the Mortgage Agreement. Louisiana Civil Code Article 2046 provides a general rule of contract construction: "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties intent." La. Civ. Code art. 2046. The meaning and intent of parties to a written contract is generally ascertained from the four corners of the instrument. *Durham Mgmt., Inc. v. Bank One, Louisiana, Nat'l Ass'n*, 03-2479, p. 8 (La. App. 1 Cir. 2/11/05); 906 So. 2d 489, 495 (citing *Gaubert v. Toyota Motor Sales U.S.A., Inc.*, 99-

2569, p. 3 (La. App. 1 Cir. 11/3/00); 770 So. 2d 879, 881).

> The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the clear meaning of the parties.  Only if the language can **reasonably** be read to have more than one **reasonable** meaning can the language be said to be ambiguous.

*Rando v. Top Notch Props.*, *L.L.C.*, 03-1800, p. 4 (La. App. 4 Cir. 6/2/04); 879 So. 2d 821, 825 (internal citations omitted).

The first paragraph of Section 5 of the Mortgage Agreement clearly states that the Lender may change the amount of insurance coverage that the Borrower is required to procure while the loan is outstanding.  The second paragraph in Section 5 explicitly imparts the Lender with permission to procure insurance for the Borrower in the event the Borrower fails to obtain insurance in the amount the Lender requests.  Additional language follows regarding the Borrower's responsibility for the expense of additional coverage and the calculation of interest for the indebtedness amount.  Nothing in this language is ambiguous, unclear or could be subject to different interpretation.

Hayes argues that AmPro agreed at the time of the Mortgage Agreement's execution that a $50,000 flood insurance policy satisfied the insurance requirement and the parties intended that this amount stay in effect throughout the life of Hayes' mortgage loan obligation.  However, the contract contains no evidence of this claim.  No language in the Mortgage Agreement contradicts the written insurance provision or indicates an intent of the parties to preclude its application.  Nor is there any evidence that Hayes and AmPro intended to alter this contract term through an amendment or rider to the Mortgage Agreement.[2]  Hayes argues that he did not agree to these

---

[2]The Mortgage Agreement contains one exhibit ("Exhibit A") which includes a description of the property and a rider ("1-4 Family Rider") concerning assignment of rents.

insurance terms and negotiated a contract which prohibited modification of the amount of insurance coverage, but he is assumed to have read the contract and understood the language which clearly states otherwise.[3] *See Holland v. Breaux,* 2005 WL 3542908, at *6 (E.D. La. Nov. 22, 2005); *Aguillard v. Auction Mgmt.*, 04-2857 (La. 6/29/05); 908 So. 2d 1, 22.

Given the clear language of the contract provision and the absence of any evidence suggesting otherwise, the Court finds that the Lender is clearly within its contractual rights under the Mortgage Agreement to change the amount of flood insurance the Borrower is required to purchase, and the Borrower is responsible for the price of additional coverage.

Hayes claims that Wells Fargo is not permitted to alter the insurance coverage requirements by arguing that the term "Lender" in Section 5 refers exclusively to AmPro and that no other party is mentioned or implied in the contract. However, the Mortgage Agreement defines "Lender" to include "any successors and assigns of the Lender first named above, as well as any subsequent holder or holders of the Note." Mortgage Agreement, ¶ 32. The Mortgage Agreement clearly permits assignment by AmPro to another lender. As a permitted assignee to the Mortgage, Wells Fargo is entitled to exercise the contractual rights that AmPro possessed as lender under the Mortgage Agreement. La. Civ. Code art. 2642; *In the Matter of Caddo Parish-Villas South, Ltd. v. Beal Bank, S.S.B.*, 250 F.3d 300, 302 (5th Cir. 2001).

Hayes also contends that once AmPro accepted the flood insurance coverage in the amount equal to indebtedness, AmPro waived any right to require a greater amount of flood coverage. No evidence exists of this claim in the Mortgage Agreement or by amendment. This reasoning would have the Court ignore the plain language of the contract. Furthermore, if the

---

[3]"A contract executed in standard form of one party must be interpreted, in case of doubt, in favor of the other party. *Durham*, 906 So. 2d at 495 (citing La. Civ. Code art. 2056), but there is no doubt in this case, as the contract language is clear and unambiguous.

Court were to follow Hayes' line of reasoning, any contract provision permitting a party to modify their behavior or later exercise rights that they do not choose to exercise at the time of execution would be rendered meaningless. A party would be forced to exercise all of its discretionary rights at the time of contract execution or the party would thereby be deemed to have waived such rights. The Court declines to follow this line of reasoning.

Hayes further argues that under Louisiana law, Wells Fargo could only require him to purchase flood coverage in an amount equal to the loan balance. However, federal law controls in this context, as the National Flood Insurance Act of 1968 ("NFIA"), 42 U.S.C. §4001 *et seq.*, directly speaks to the issue. The primary intent of federal flood law is to decrease the federal government's financial burden related to flood disaster assistance. *Wentwood Woodside I, L.P. v. GMAC Commer. Mortg. Corp.*, 2004 U.S. Dist. LEXIS 20093, at * 8-9 (S.D. Tex. Aug. 31, 2004) (citing *Till v. Unifirst Fed. Sav. & Loan Ass'n*, 653 F.2d 152, 159 (5th Cir. 1981)). Flood damage also impacts federal deposit insurance. As many lenders' deposits are insured by the national government, flood damage may significantly threaten lender solvency. *Wentwood*, 2004 U.S. Dist. LEXIS 20093, at * 9. Recognizing this impact, Congress passed the NFIA and the Flood Disaster Protection Act of 1973. Under the NFIA, regulated lenders are prohibited from issuing mortgage loans secured by real property located within a SPHA unless such property is covered by flood insurance. 42 U.S.C. § 4012a(b). The homeowner mortgagor is required to carry the insurance, and in the event he or she fails to do so, a mortgagee is authorized to obtain flood insurance for the mortgaged property and charge the cost back to the mortgagor, known as "force-placing" the insurance. 42 U.S.C. § 4012a(e). The amount of flood insurance the homeowner mortgagor is required to carry must be "*at least* equal to the lesser of the outstanding principal balance of the designated loan or the maximum limit of coverage available for the

particular type of property, whichever is less." 42 U.S.C. § 4012a(b)  (emphasis added).[4] The "at least" language indicates that this requirement is a minimum with which the lender must comply and does not prohibit a contractual agreement whereby the lender may require coverage in an amount greater than the balance of the loan secured by the property vulnerable to flooding. Furthermore, "the qualified phrasing is reiterated by the requirement in § 4012a(e) that the borrower be notified of his obligation to obtain flood insurance that is 'not less' than the amount required by subsection (b)(1)." *Custer v. Homeside Lending, Inc.*, 858 So. 2d 233, 245 (Ala. 2003).

Hayes cites as support a Louisiana court's interpretation of the language in Section 4012(a), *Norris v. Union Planters Bank*, 98-1581 (La. App. 1 Cir. 6/25/99); 739 So. 2d 869.[5]

---

[4]Assuming Hayes' property is a single-family residence, the maximum amount of coverage available for his property is $250,000 under the National Flood Insurance Program, a federal program that provides subsidized flood insurance, pursuant to 44 C.F.R. § 61.6.  There is no set maximum amount under the NFIA for coverage issued by a non-government insurance provider.

[5]In *Norris*, a Louisiana appellate court affirmed the lower court's decision that homeowners with an outstanding mortgage secured by property located within a SFHA were required to purchase flood insurance under the NFIA, and thus the homeowners were indebted to the bank for the premium amount of insurance procured by the bank on their behalf.  *Id*. at 873.  However, the court stated that the bank could not require the homeowners to obtain insurance beyond the amount of the outstanding loan balance. *Id.* at 874.  The only other court that has had the occasion to consider *Norris* declined to follow its holding.  *Custer*, 858 So. 2d at 244.  The *Custer* court found that *Norris* misinterpreted language from a decision by the United States Court of Appeals for the Seventh Circuit, *Mid-America National Bank of Chicago v. First Savings & Loan Ass'n of South Holland*, 737 F.2d 638 (7th Cir. 1984), on which *Norris* heavily relied for its holding.  It found that the plain and ordinary meaning of § 4012(a)(b)(1) and supporting language in § 4012(a)(e) established a minimum amount of flood insurance that could be force placed.  *Custer,* 858 So. 2d at 245-46.  The *Custer* court concluded that Congress would not be opposed to contractual procurement of force-placed insurance coverage to the full value of property located in a flood zone: "After all, the obligation borne by the federal treasury for flood-disaster relief assistance to homeowners of properties damaged or destroyed by flooding may well extend beyond the balance of any mortgage loan encumbering them." *Custer*, 858 So. 2d at 244 (citing *Peal v. North Carolina Farm Bureau Mut. Ins. Co*., 212 F. Supp. 2d 508, 513 (E.D.N.C. 2002)).

Because *Norris* was a state court case interpreting a federal statute, it is not binding on this Court, *see Grantham v. Avondale Indus. Inc.*, 964 F.2d 471, 473 (5th Cir. 1992) (citing *Pauk v. Board of Trustees of City University of New York*, 654 F.2d 856, 866 n.6 (2d Cir. 1981) ("a state court decision cannot preclude a federal court's more authoritative decision on matters of federal law") and *In re Asbestos Litigation*, 829 F.2d 1233, 1237 (3rd Cir. 1987)), and this Court declines to follow its holding. *See Custer*, 858 So. 2d at 244. The Court finds that Wells Fargo was clearly within its rights under the federal flood program to require Hayes to obtain flood insurance beyond the outstanding value of the mortgage.

Having made the determination that Wells Fargo acted within NFIA compliance and that the Mortgage Agreement expressly permits the Lender to alter the amount of flood insurance coverage, the Court finds that Wells Fargo did not breach its contractual obligations when it force-placed the insurance in the event of Hayes' failure to obtain the requested amount of coverage. Hayes states that Wells Fargo's "interpretation" of the contract was not made in good faith. However, this is not an issue of interpretation of a contract clause subject to different meanings. The Mortgage Agreement clearly and explicitly states that Wells Fargo had the discretion to take the action that it did. Furthermore, Wells Fargo notified Hayes before it force-placed flood insurance in an amount exceeding the outstanding loan balance. Hayes has not presented any evidence establishing a breach of the contract, but only makes conclusory allegations and unsubstantiated claims, contending that the parties agreed at the time of contract execution that a maximum insurance coverage of $50,000 would always apply. Thus, Wells Fargo is entitled to summary judgment as a matter of law on this claim. *See Douglass*, 79 F.3d at 1430.

C.      **Hayes' Claim Regarding Violation of Unfair Trade Practices and Consumer**

**Protection Laws**

Wells Fargo further asserts that it is entitled to summary judgment on Hayes' claim that Wells Fargo's interpretation of the mortgage constitutes an unfair trade practice under state and federal law.  First, Wells Fargo claims that its enforcement of a contractual right is not an unfair or deceptive trade practice under LUPTA.  In any event, Wells Fargo contends that it is excluded from LUPTA, as it is regulated by a federal banking agency, and LUPTA is preempted by federal law as it relates to flood insurance requirements in mortgages held by a national bank.  Second, Wells Fargo claims that no federal statute exists which provides a remedy for an unfair trade practice violation similar to LUPTA.

Regarding the assertion that Wells Fargo's actions constitute unfair trade practices under federal law, Hayes contends that a federal remedy exists under the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq,* and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq,* by which consumers are shielded from costs and fees that increase the cost of the transactions without any real benefits to the consumer.  Hayes contends that a lender's discretion to alter the required amount of flood insurance during the course of the loan qualifies as a "material disclosure" under TILA as Hayes factored in the costs of a loan requiring insurance with less than full property value coverage when he was shopping to obtain a loan.

      1.      **State Unfair Trade Practice Claims**

The Court first addresses the parties' arguments regarding the state unfair trade practice claim.  LUPTA provides that it is unlawful to use unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.  La. Rev. Stat. § 51:1405(A).  "[A] practice is considered unfair, in the context of unfair trade practice law, when it offends public policy, and when the practice is unethical, oppressive, unscrupulous, or substantially

injurious to consumers or business competitors." *Doland v. ACM Gaming Co.*, 05-427, p. 12 (La. App. 3 Cir. 12/30/05); 921 So. 2d 196, 202 (citing *Inka's S'Coolwear, Inc. v. Sch. Time., L.L.C.*, 97-2271 (La. App. 1 Cir. 11/6/98); 725 So. 2d 496). Any person who "suffers any ascertainable loss of money or movable property, corporeal or incorporeal" due to unfair trade practices may bring an action for damages, costs and attorney fees. La. Rev. Stat. § 51:1409. The person, however, must be a direct consumer or business competitor of the party who allegedly committed a violation. *Vermillion Hosp., Inc. v. Patout*, 05-82, p. 6 (La. App. 3 Cir. 6/8/05); 906 So. 2d 688, 692 (internal citations omitted); *Orthopoedic & Sports Injury Clinic v. Wang Laboratories, Inc.*, 922 F.2d 220, 225-26 (5th Cir. 1991).

The determination that alleged conduct equates to an unfair trade practice requires fact-sensitive analysis, and the decision must be made on a case-by-case basis. *Doland*, 921 So. 2d at 202 (referring to *Vermillion*, 906 So. 2d at 691); *Copeland v. Treasure Chest Casino, L.L.C.*, 01-1122, p. 6 (La. App. 1 Cir. 6/21/02); 822 So. 2d 68, 71. When the conduct at issue is merely "the appropriate exercise of good business judgment and the proper workings of free enterprise," *Vermillion*, 906 So. 2d at 692 (quoting *Monroe Medical Clinic, Inc. v. Hospital Corp. of America*, 522 So.2d 1362, 1365 (La. App. 2 Cir. 1988)), *see also Inka's*, 725 So. 2d at 501, no LUPTA violation will be found to exist. In this case, Wells Fargo has merely enforced its contractual rights under the Mortgage, and its actions were not "unethical, oppressive, unscrupulous, or substantially injurious" to Hayes. "Protecting one's rights under a contract is not an offense to any public policy and is not unethical or oppressive such as to be an unfair trade practice." *Inka's*, 725 So. 2d at 501.[6] Thus, Wells Fargo did not commit a violation under

---

[6]The appellate court in *Inka* also quoted language from the trial court's decision: "If you have a contract, people are supposed to live up to the terms. Enforcing your rights under a contract should not be looked upon as doing something wrong." *Id*. at 501-02.

LUTPA.

The Court also finds merit in Wells Fargo's argument that it is excluded from LUPTA as Section 51:1406(1) of LUPTA expressly exempts from its application "actions or transactions subject to the jurisdiction of...federal banking regulators who possess authority to regulate unfair or deceptive trade practices." La. Rev. Stat. § 51:1406(1). As Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A., which is regulated by the Office of the Comptroller of Currency ("OCC"), and the OCC directly regulates lender flood insurance requirements and implements NFIA and FDPA provisions, 12 C.F.R. § 22,[7] LUPTA is not applicable in this case.

Given the inapplicability of LUPTA and the Court's finding that Wells Fargo's exercise of its contractual right does not amount to a LUPTA violation (assuming it would apply), the Court need not address Wells Fargo's argument that LUPTA's application to flood insurance requirements is expressly pre-empted by federal law.

**2. Federal Unfair Trade Practice Claims**

Lastly, the Court addresses Hayes' claims under TILA and RESPA regarding Wells Fargo's alleged violations of federal unfair trade practices.

Congress passed the TILA to "assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." 15 U.S.C. § 1601(a). TILA applies a system of strict liability in favor of consumers when the lender fails to make the required disclosure. 15 U.S.C. § 1640(a). "[O]nce the court finds a violation,

---

[7] 12 C.F.R. § 22.3 forbids lenders from issuing mortgage loans secured by property within flood zones unless the property is insured for flood "at least equal to the lesser of the outstanding principal balance of the designated loan or the maximum limit of coverage available for the particular type of property." 12 C.F.R. § 22.7 also requires the lender to notify the borrower to obtain flood insurance, to purchase such insurance on the borrower's behalf if he or she fails to do so, and to charge the borrower for the cost of premiums and other fees related to procurement of insurance.

no matter how technical, it has no discretion with respect to the imposition of liability." *Grant v. Imperial Motors*, 539 F.2d 506, 510 (5th Cir. 1976).

To implement TILA, "Congress delegated expansive authority to the Federal Reserve Board (Board) to enact appropriate regulations...." *Household Credit Services, Inc. v. Pfennig*, 541 U.S. 232, 235, 124 S. Ct. 1741, 158 L. Ed. 2d 450 (2004) (citing § 1604(a)). "Congress has specifically designated the [Board] and staff as the primary source for interpretation and application of truth-in-lending law. *Id.* at 238 (quoting *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566, 63 L. Ed. 2d 22, 100 S. Ct. 790 (1980)). The Board exerted its responsibility by promulgating Regulation Z, 12 C.F.R. Part 226, *Ford*, 444 U.S. at 555, which "absent some obvious repugnance to the statute should be accepted by the courts, as should the Board's interpretation of its own regulation." *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219, 101 S. Ct. 2266, 68 L. Ed. 2d 783 (1981).

Finance charges are defined under TILA as "the sum of all charges, payable directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a).[8] If a lender fails to disclose the total finance charges, the consumer is entitled to statutory damages as well as rescission of the loan, as the failure to disclose constitutes a material violation. 15 U.S.C. § 1640(a); 12 C.F.R. § 226.23(a)(3) n. 48. The statute also provides examples of finance charges, which include "[p]remiums or other charges for insurance against loss of or damage to property, or against liability arising out of the ownership or use of property, written in

---

[8] Regulation Z provides a similar definition of "finance charge":
> The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit...."

12 C.F.R. § 226.4(a).

connection with a credit transaction." 12 C.F.R. § 226.4(b)(8) (2006).  However, according to 12 C.F.R. § 226.4(d)(2)(i), premiums for insurance against loss or damage to property are specifically excluded from the mandated disclosure when the borrower may choose the provider of insurance coverage and the ability to choose is disclosed.  Here, the language in the Mortgage Agreement explicitly states that Hayes must obtain flood insurance, but it does not limit him to a particular insurance provider or require him to go through the Lender to obtain coverage.  Rather the Agreement states that "[t]he insurance carrier providing insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably." Mortgage Agreement, ¶5.  Thus, the Lender was not required to disclose the amount of flood insurance premiums under TILA, in accordance with Section 226.4(d)(2)(i).

Additionally, the Mortgage Agreement executed by Hayes clearly contains material disclosure of the fact that the amount of insurance required could change at the Lender's discretion.  "It is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him." *Aguillard*, 908 So. 2d at 17 (referring to *Tweedel v. Brasseaux*, 433 So. 2d 133, 137 (La. 1983)).  The relevant language is not buried within the Mortgage Agreement in fine print, but appears within the first paragraph of the section titled "Property Insurance" in bold lettering.  When Hayes signed the Mortgage Agreement, he is assumed to have read and understood the document, which contained material disclosure regarding flood insurance coverage.  Therefore, Wells Fargo is entitled to summary judgment on  Hayes' TILA claim.

Finally, the Court determines that Hayes' RESPA claim also fails.  Hayes asserts that he

procured the "appropriate level of insurance prior to the closing and undertook to continue this so that he could entirely avoid an escrow situation and the possibility of additional fees." Thus, it appears that Hayes seeks to bring a claim under Section 10 of RESPA. 12 U.S.C. § 2609(a) (limiting amount of advance deposit in escrow account that lender may require in connection with federally related mortgage loan). However, no private right of action may be asserted under this section of the Act. *Louisiana v. Litton Mortg. Co.*, 50 F.3d 1298, 1301-02 (5th Cir. 1995); *Allison v. Liberty Sav.*, 695 F.2d 1086, 1091 (7th Cir. 1982).

### IV.   CONCLUSION

For the foregoing reasons, Wells Fargo's Motion for Summary Judgment is GRANTED.

New Orleans, Louisiana, this 25th day of October, 2006.

*[signature: Eldon E. Fallon]*

UNITED STATES DISTRICT JUDGE